UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| BEN ABBOTT & ASSOCIATES, PLLC, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | CIVIL ACTION NO. 3:20-cv-1790-B |
| | § | |
| QUINTESSA LLC and STANLEY & ASSOCIATES, PLLC, | § | |
| | § | |
| | § | |
| Defendants. | § | |

**MEMORANDUM OPINION AND ORDER**

Before the Court is Plaintiff Ben Abbott & Associates, PLLC ("Abbott")'s Motion to Remand for Lack of Subject Matter Jurisdiction (Doc. 9). In this motion, Abbott asks the Court to remand the case to state court and award Abbott attorneys' fees. For the reasons detailed below, the Court **GRANTS IN PART** and **DENIES IN PART** Abbott's motion. Specifically, because the Court concludes that Defendant Stanley & Associates, PLLC ("Stanley") is properly joined, the Court lacks subject-matter jurisdiction over this dispute. Accordingly, the Court **GRANTS** Abbott's motion insofar as Abbott urges the Court to remand the case. But to the extent Abbott seeks an award of attorneys' fees, the Court **DENIES** its request.

I.

BACKGROUND[1]

This case arises from a law firm's effort to prevent other entities from capitalizing on its trademarks through the purchase of these trademarks as keyword search terms on Google. In sum,

---

[1] The Court draws the facts from Abbott's state-court petition (Doc. 2, App., 7–16).

- 1 -

Abbott, a Texas law firm, alleges a scheme in which Defendant Quintessa LLC ("Quintessa") purchases the keyword search terms "Ben Abbott" and "Ben Abbott & Associates" for Google advertisements and "places its Google advertisements in a manner intended to deceive [Abbott's] potential clients." Doc. 2, App., 7, 9 (Pet.). For example, Abbott describes how potential clients, upon searching for "Ben Abbott" on Google, "are presented with a 'click-to-call' advertisement for Accident Injury Legal Center . . . ." *Id.* at 7–8. Though the click-to-call advertisement does not permit a potential client "to actually click on the link and visit the 'Accident Injury Legal Center' website," Abbott explains, the website "intentionally mimics that of a law firm" even though the Accident Injury Legal Center is not, in fact, a law firm. *Id.* at 7, 10, 11. For instance, the website contains language such as "Our attorneys have helped THOUSANDS of clients," and "there's NO FEE until we WIN FOR YOU!," without indicating "who the 'we' is, or who 'our clients' are." *Id.* at 11.

According to Abbott, when a prospective client clicks on the click-to-call advertisement, the client's device calls the listed telephone number. *Id.* Quintessa then "divert[s]" these potential clients to itself, and Stanley, a law firm, "pays Quintessa for referring leads" on the potential clients. *Id.* at 7, 12. Abbott alleges that not only does Stanley pay Quintessa for referring leads—it also "has full knowledge of Quintessa's deceptive practices . . . ." *Id.* at 12. As a result of this scheme, Abbott claims, Quintessa and Stanley deceived numerous "clients and potential clients . . . ." *Id.* at 8.

Based on these allegations, Abbott brought four Texas common-law claims against Quintessa and Stanley in state court: (1) unfair competition; (2) trademark infringement; (3) tortious interference; and (4) civil conspiracy. *Id.* at 12–14. On July 7, 2020, Quintessa removed the case to federal court based on diversity jurisdiction by attempting to invoke the snap-removal doctrine. Doc.

1, Notice of Removal, 2 (citing *Tex. Brine Co. v. Am. Arb. Assoc. Inc.*, 955 F.3d 482 (5th Cir. 2020)).[2] Subsequently, Quintessa amended its notice of removal to instead allege that Abbott "has no possibility of recovering on its claims against Stanley" and thus improperly joined Stanley as a defendant. Doc. 7, Am. Notice of Removal, 4. As a result, Quintessa claims the Court has diversity jurisdiction over this dispute. *Id.*

Abbott thereafter filed a motion to remand the case, arguing that Abbott and Stanley are both citizens of Texas, and Abbott sufficiently alleges claims against Stanley. Doc. 9, Pl.'s Mot., 3–4. Because the Court has received all briefing on this motion, it is ripe for review.

## II.

## LEGAL STANDARDS

A.   *Removal Pursuant to Section 1441(a)*

A defendant may remove a state-court action to federal district court if the district court has original jurisdiction over the case and Congress has not expressly prohibited removal. 28 U.S.C. § 1441(a). "[T]he burden of establishing federal jurisdiction is placed upon the party seeking removal." *Willy v. Coastal Corp.*, 855 F.2d 1160, 1164 (5th Cir. 1988) (citation omitted). Because of "significant federalism concerns," removal jurisdiction is strictly construed. *Id.* (citations omitted). When determining if a federal district court has jurisdiction to hear a case on removal, "any doubt as to the propriety of removal should be resolved in favor of remand." *Gutierrez v. Flores*, 543 F.3d 248, 251 (5th Cir. 2008) (citation and quotation marks omitted).

---

[2] In *Texas Brine*, the Fifth Circuit held that despite the "forum-defendant rule" codified in 28 U.S.C. § 1441(b)(2), a non-forum defendant can remove a case to federal court "when a not-yet-served defendant is a citizen of the forum state." This tactic is known as "snap removal." *Tex. Brine Co.*, 955 F.3d at 485, 487.

B.   *Improper Joinder*

"The improper joinder doctrine constitutes a narrow exception to the rule of complete diversity." *Cuevas v. BAC Home Loans Servicing, LP*, 648 F.3d 242, 249 (5th Cir. 2011) (citation omitted). "Under this doctrine, the court may disregard the citizenship of an improperly joined, non-diverse defendant, dismiss that defendant from the case, and exercise subject matter jurisdiction over the remaining diverse defendants." *Shenavari v. Allstate Vehicle & Prop. Ins. Co.*, 448 F. Supp. 3d 667, 669–70 (S.D. Tex. Mar. 23, 2020) (citing *Flagg v. Stryker Corp.*, 819 F.3d 132, 136 (5th Cir. 2016)).

When removal based on diversity jurisdiction is premised upon improper joinder, the removing party "bears a heavy burden . . . ." *Smallwood v. Ill. Cent. R.R. Co.*, 385 F.3d 568, 574 (5th Cir. 2004) (en banc) (citation omitted). It must demonstrate "(1) actual fraud in the pleading of jurisdictional facts, or (2) inability of the plaintiff to establish a cause of action against the non-diverse party in state court." *Id.* at 573 (citation omitted).

The second type of showing—inability to sustain a cause of action against the non-diverse defendant—requires the removing party to demonstrate "that there is absolutely no possibility that the plaintiff will be able to establish a cause of action against the non-diverse defendant in state court." *Griggs v. State Farm Lloyds*, 181 F.3d 694, 699 (5th Cir. 1999) (citations omitted). In other words, showing that there is "no possibility of recovery" against an in-state defendant means showing "that there is no reasonable basis for the district court to predict that the plaintiff might be able to recover against an in-state defendant." *Smallwood*, 385 F.3d at 573.

In assessing the viability of a claim against a non-diverse defendant for improper-joinder purposes, "[t]he court may conduct a Rule 12(b)(6)-type analysis, looking initially at the allegations

of the complaint to determine whether the complaint states a claim under state law against the in-state defendant." *Id.* Or, in rare instances where the plaintiff has "misstated or omitted discrete facts that would determine the propriety of joinder . . .[,] the district court may, in its discretion, pierce the pleadings and conduct a summary inquiry." *Id.* (citation omitted). However, "a summary inquiry is appropriate only to identify the presence of discrete and undisputed facts that would preclude [the] plaintiff's recovery against the in-state defendant." *Id.* at 573–74.

## III.

## ANALYSIS

In response to Abbott's motion to remand, Quintessa asserts that because Abbott fails to state a claim against Stanley, Stanley is improperly joined. Doc. 17, Def.'s Resp., 4–10. Alternatively, Quintessa claims that "a summary inquiry of the undisputed fact of prior settlement" would demonstrate improper joinder. *Id.* at 9.

The Court first addresses Quintessa's request for a summary inquiry. Quintessa does not demonstrate that such an inquiry is warranted; thus, the Court turns to whether Abbott has shown a "reasonable basis" for recovery against Stanley. *Smallwood*, 385 F.3d at 573. Because Abbott states a claim against Stanley for civil conspiracy, the Court concludes that Stanley is properly joined and remands the case to state court. Nevertheless, since Quintessa had an objectively reasonable basis for removal, the Court denies Abbott's request for attorneys' fees.

A.   *Whether the Court Should Conduct a Summary Inquiry*

Quintessa asks the Court to "'pierce the pleadings and conduct a summary inquiry' to find improper joinder." Doc. 17, Def.'s Resp., 9 (quoting *Smallwood*, 383 F.3d at 573). In support,

Quintessa explains that Abbott filed an action in state court against Stanley and Quintessa "on identical facts," and Stanley subsequently settled the claims at issue by agreeing "not to use the Ben Abbott name for advertising purposes." *Id.* (quoting Doc. 7, Am. Notice of Removal, 2). This alleged settlement agreement, Quintessa suggests, demonstrates "Stanley's intent to cease bidding on Abbott's trademarks" and thereby "undermines any . . . 'likelihood of confusion'"—an element underpinning Abbott's claims against Stanley. *Id.* at 9–10; *see infra* Section III.B.

But as Abbott points out, Quintessa has not presented any evidence of a settlement agreement, and Abbott dismissed its previous claims against Stanley without prejudice. Doc. 20, Pl.'s Reply, 1; *see* Doc. 9-1, Ex. A. Thus, Abbott has not "misstated or omitted discrete facts that would determine the propriety of joinder," *Smallwood*, 385 F.3d at 573 (citation omitted), and the Court **DENIES** Quintessa's request for a summary inquiry.

B.  *Whether Abbott Demonstrates a Reasonable Basis for Recovery Against Stanley*

Quintessa next claims that because Abbott fails to state a claim against Stanley, Abbott improperly joined Stanley as a defendant. Doc. 17, Def.'s Resp., 1. In its state-court petition, Abbott brings four claims against Quintessa and Stanley under Texas common law: (1) unfair competition; (2) trademark infringement; (3) tortious interference; and (4) civil conspiracy. Doc. 2, App., 12–14 (Pet.). The Court first turns to whether Abbott establishes a reasonable basis for recovering on its civil-conspiracy claim against Stanley.[3]

---

[3] Abbott contends that the Court should not consider Quintessa's Rule 12(b)(6) arguments because they did not appear in its original or amended notice of removal. Doc. 20, Pl.'s Reply, 3. However, the amended notice of removal states that Abbott "has no possibility of recovery against Stanley . . . ." Doc. 7, Am. Notice of Removal, 3. Because the determination of whether Abbott has a possibility of recovery against Stanley implicates a "Rule 12(b)(6)-type analysis," the Court concludes that Quintessa raised its improper-joinder theory in its amended notice of removal. *See Smallwood*, 385 F.3d at 573.

Under Texas law, to prevail on a civil-conspiracy claim, the plaintiff must show: "(1) two or more persons; (2) an object to be accomplished; (3) a meeting of minds on the object or course of action; (4) one or more unlawful, overt acts; and (5) damages as the proximate result." *Murray v. Earle*, 405 F.3d 278, 293 (5th Cir. 2005) (quoting *Massey v. Armco Steel Co.*, 652 S.W.2d 932, 934 (Tex. 1983)); *see Agar Corp., Inc. v. Electro Cirs. Int'l, LLC*, 580 S.W.3d 136, 141 (Tex. 2019) (reciting the elements from *Massey*). Further, the plaintiff "must prove that the defendants conspired to accomplish an unlawful purpose or used unlawful means to accomplish a lawful purpose." *Id.* (citing *Juhl v. Airington*, 936 S.W.2d 640, 644 (Tex. 1996)).

In its response, Quintessa contends that Abbott fails to sufficiently allege an unlawful act by Stanley. Doc. 17, Def.'s Resp., 8; *see* Doc. 16, Mot. to Dismiss, 11–12.[4]

As a preliminary matter, contrary to Quintessa's suggestion, Abbott need not allege an overt act by each defendant to sustain its civil-conspiracy claim. Rather, Abbott must sufficiently allege "one or more unlawful, overt acts . . . taken in pursuance of the object or course of action . . . ." *First United Pentecostal Church v. Parker*, 514 S.W.3d 214, 222 (Tex. 2017). Accordingly, the Court need only determine whether Abbott sufficiently alleges an unlawful act in furtherance of the alleged conspiracy.[5]

In its petition, Abbott alleges three acts to support its civil-conspiracy claim: Quintessa's creation of advertisements that confused and diverted Abbott's customers, Quintessa's receipt of

---

[4] Quintessa purports to incorporate Stanley's motion-to-dismiss brief (Doc. 16) into its response to Abbott's motion to remand. Doc. 17, Def.'s Resp., 3 n.2. Though Abbott opposes this incorporation by reference, *see* Doc. 20, Pl.'s Reply, 7 n.3, the Court considers the arguments set forth in Stanley's motion-to-dismiss brief since they are, for the most part, duplicative of Quintessa's response arguments.

[5] Quintessa does not contest the sufficiency of Abbott's allegations with respect to the remaining elements of Abbott's civil-conspiracy claim. *See* Doc. 17, Def.'s Resp., 8.

payment for these advertisements, and Stanley's payment to Quintessa for its diversion of clients. Doc. 2, App., 14 (Pet.). As explained below, Abbott sufficiently alleges that Quintessa's advertisements are unlawful because they constitute trademark infringement. Abbott therefore has a reasonable basis for recovering against Stanley on its civil-conspiracy claim.

Quintessa first argues that its advertisements are lawful because "almost every jurisdiction, including this one, has determined that the purchase of trademarks as a search engine keyword advertisement is not unlawful." Doc. 17, Def.'s Resp., 8. For support, Quintessa relies on cases suggesting that the purchase of keyword search terms alone is insufficient to support a trademark-infringement claim. *Id.* at 4–5 (citing *Tempur-Pedic N. Am., LLC v. Mattress Firm, Inc.*, 2015 WL 2957912, at *7–8 (S.D. Tex. July 11, 2017); *Coll. Network, Inc. v. Moore Educ. Publishers, Inc.*, 378 F. App'x 403, 414 (5th Cir. 2010) (per curiam); *Jim S. Adler, P.C. v. McNeil Consultants, LLC*, 2020 WL 5134774, at *5 (N.D. Tex. Aug. 10, 2020), *adopted by* 2020 WL 5106849 (N.D. Tex. Aug. 29, 2020), *appeal filed*, No. 20-10936 (5th Cir. Sept. 11, 2020)).

The Court acknowledges that allegations of the purchase of keyword terms, standing alone, are likely insufficient to sustain a trademark-infringement claim. To demonstrate trademark infringement, a plaintiff must show the defendant's use of the plaintiff's mark and a resulting "likelihood of confusion in the minds of potential consumers . . . ." *Elvis Presley Enters., Inc. v. Capece*, 141 F.3d 188, 193 (5th Cir. 1998) (citations omitted). A plaintiff alleging only a purchase of keyword terms has probably not sufficiently alleged a likelihood of confusion, because a likelihood of confusion requires "more than a mere possibility of confusion." *Id.* (citations omitted).

Nonetheless, the Court is not aware of any Fifth Circuit precedent foreclosing a trademark-infringement claim based on allegations of purchasing keyword terms. In *College Network*,

the Fifth Circuit case cited by Quintessa, the Fifth Circuit did not conduct a likelihood-of-confusion analysis; rather, it noted that "sufficient evidence supported the jury's finding of no likelihood of confusion under the Fifth Circuit test." 378 F. App'x at 414 n.5.

Further, as noted in *Adler*, another case relied upon by Quintessa, "[a] defendant's use of a plaintiff's marks in keyword search engine ads to direct users to the defendant may be unlawful if it causes consumer confusion." 2020 WL 5134774, at *6 (citing *Abraham v. Alpha Chi Omega*, 781 F. Supp. 2d 396, 423 (N.D. Tex. 2011)).

Here, Abbott alleges that Quintessa causes confusion "regarding the identity, existence, and affiliations of 'Accident Injury Legal Center'" through an "intentionally vague advertisement" and website. Doc. 2, App., 11 (Pet.). Accordingly, Abbott does not allege solely a purchase of keyword terms; rather, it alleges "use of [its] marks in keyword search engine ads" that "causes consumer confusion." *Adler*, 2020 WL 5134774, at *6 (citation omitted). Thus, even if the purchase of keyword search terms is insufficient to support a trademark-infringement claim, Abbott alleges more.

Quintessa next contends that Abbott fails to show that the advertisements create a likelihood of confusion. Doc. 17, Def.'s Resp., 5. According to Quintessa, "[t]he overwhelming tide of case law . . . establishes that there can be no likelihood of confusion where, as here, the resulting advertisement or website does not contain the trademark in question." *Id.* at 5–6 (citation omitted). Because its "advertisements and website do not incorporate Abbott's marks," Quintessa argues, there is no likelihood of confusion "as a matter of law." *Id.* at 6 (citing *Adler*, 2020 WL 5134774, at *6).

The Court disagrees. Quintessa may ultimately prevail on its argument that its failure to visibly incorporate Abbott's marks defeats Abbott's trademark-infringement allegations. But here, the Court is examining only whether Abbott has stated a civil-conspiracy claim, which requires an

unlawful act such as trademark infringement. And the Court has not found any binding authority indicating that a plaintiff's trademark-infringement claim fails as a matter of law where the allegedly infringing advertisements fail to visibly incorporate the plaintiff's marks.[6]

Rather, "[i]n the Fifth Circuit, trademark visibility has not been recognized as necessary to support a finding of likelihood of confusion." *Am. Can! v. Car Donations Found.*, 2019 WL 1112667, at *10 (N.D. Tex. Mar. 11, 2019) (citations omitted). Indeed, Northern District of Texas "precedent . . . does not suggest that lack of trademark visibility is determinative in keyword advertising cases, which similarly concern visible search result placement caused by invisible use of a trademark." *Id.* (citations omitted). As a result, Abbott's failure to allege that Quintessa incorporated Abbott's marks into its advertisements does not necessarily defeat Abbott's allegations of infringement.

To determine whether Abbott has a reasonable basis for recovery on its civil-conspiracy claim premised upon Quintessa's trademark infringement, the Court need only determine that a likelihood of confusion is plausible. *See Smallwood*, 385 F.3d at 573 (directing courts to conduct a Rule 12(b)(6) analysis to determine whether the plaintiff has a reasonable basis for recovery); *John Crane Prod. Sols., Inc. v. R2R & D, LLC*, 2012 WL 1571080, at *3 (N.D. Tex. May 4, 2012). To assess likelihood of confusion, the Court examines several "nonexhaustive 'digits of confusion'": "(1) the type of trademark; (2) mark similarity; (3) product similarity; (4) outlet and purchaser identity; (5) advertising media identity; (6) defendant's intent; (7) actual confusion; and (8) care exercised by potential purchasers." *Xtreme Lashes, LLC v. Xtended Beauty, Inc.*, 576 F.3d 221, 227 (5th Cir. 2009) (citation omitted). But in conducting a Rule 12(b)(6)-type analysis, the Court need not

---

[6] Though the district court in *Adler* appears to reach this conclusion, it cites to no Fifth Circuit or Supreme Court precedent for support. *See Adler*, 2020 WL 5134774, at *6.

evaluate every digit in turn; instead, the Court must examine only "whether the facts alleged, taken as true, show that [the plaintiff's] claim of a likelihood of confusion is plausible." *John Crane*, 2012 WL 1571080, at *3.

Abbott, a personal-injury law firm, alleges that it has spent "over 20 years establishing its reputation and the brand of 'Ben Abbott' and 'Ben Abbott & Associates' . . . ." Doc. 2, App., 9 (Pet.). By using these terms in internet advertising, Abbott explains, it "has established ownership" of the terms as trademarks. *Id.* And according to Abbott, Quintessa purchased these exact terms—"Ben Abbott" and "Ben Abbott & Associates"—as keyword search terms for internet advertisements and places these advertisements "in a manner intended to deceive [Abbott's] potential clients." *Id.* at 7. Abbott describes how potential clients, upon searching for "Ben Abbott" on Google, "are presented with a 'click-to-call' advertisement for Accident Injury Legal Center . . . ." *Id.* at 7–8. When a prospective client clicks on the advertisement, the client's device calls the listed telephone number. *Id.* at 11. Quintessa then "divert[s]" these potential clients to itself, and Stanley, a law firm, "pays Quintessa for referring leads" on the potential clients. *Id.* at 7, 12.

Considering these allegations in light of the digits of the confusion, the Court concludes that a likelihood of confusion is plausible. Abbott, therefore, sufficiently alleges that Quintessa's advertising scheme constitutes trademark infringement. Consequently, Abbott also sufficiently alleges an unlawful act underlying its civil-conspiracy claim—the only element Quintessa disputes with respect to this claim. *See* Doc. 17, Def.'s Resp., 8. Abbot thus has a reasonable basis for recovery on the claim.[7] Accordingly, Stanley is properly joined, the Court lacks diversity jurisdiction, and the

---

[7] Because the Court concludes Abbott has a possibility of recovery against Stanley on its civil-conspiracy claim, the Court need not analyze Abbott's remaining claims.

Court **GRANTS** Abbott's motion to remand. The Court **REMANDS** this case to the 101st Judicial District Court of Dallas County, Texas.

C.      *Whether Abbott is Entitled to Attorneys' Fees*

Abbott also asks the Court to award it attorneys' fees incurred in relation to its motion. Doc. 9, Pl.'s Mot., 9–10. Under 28 U.S.C. § 1447(c), when a district court remands a case, it "may require payment of just costs and any actual expenses, including attorney fees, incurred as a result of the removal." While the Court should not consider a defendant's motive for removal in deciding whether to require payment of attorneys' fees, it should consider "whether the defendant had objectively reasonable grounds to believe removal was legally proper." *Valdes v. Wal-Mart Stores, Inc.*, 199 F.3d 290, 292–93 (5th Cir. 2000).

Though Abbott contends that Quintessa lacked a reasonable basis for removal, the Court disagrees. As noted above, Quintessa premises its improper-joinder argument on principles of trademark-infringement law that are, in reality, unclear in the Fifth Circuit. *See supra* Section III.B. Given this lack of clarity, Quintessa's arguments are not objectively unreasonable. Thus, the Court **DENIES** Abbott's motion to the extent it seeks an award of attorneys' fees under § 1447(c).

## IV.

## CONCLUSION

The Court **GRANTS IN PART** and **DENIES IN PART** Abbott's motion (Doc. 9). Because Stanley is properly joined as a defendant, the Court lacks subject-matter jurisdiction over this dispute and **GRANTS** Abbott's motion to the extent Abbott seeks remand. Accordingly, the Court **REMANDS** this case to the 101st Judicial District Court of Dallas County, Texas. Insofar as Abbott requests an award of attorneys' fees, however, the Court **DENIES** its motion.

SO ORDERED.

SIGNED: September 21, 2020.

_____
JANE J. BOYLE
UNITED STATES DISTRICT JUDGE